480 S.E.2d 81

Frank DOBYNS, Pat Basnett, Ann K. Hubbard and Rowena Hubbard, Richard E. Rettew, G.C. Dowling, Deborah O. McCarthy, Vern E. McCarthy, John E. Ownby, Jr., Gene DeLoach, Francis F. DeLoach, N. William Pettys, Jr., Sara R. Steinmeyer, Lee Reed, Marjorie Reed, H.W. Wall, J.H. Walters, Jack C. Croft, Thomas A. Campbell, Jr., Blair Walker Hollis, June Walker Korn, Ellen D. Holstein, W.N. Barnes, Craig O. Diss, Renee M. Diss, Timothy F. Long, Valerie Long, Maya Hahn, Jan Shevin, Shirley M. Johnson, Jack J. Watts, Richard D. Ellenberg, Virginia Ingram, Donald R. Faulkner, C. Vaughn Leslie, Jr., Robert N. Brown, James A. Leslie, Mary Alice O'Neal, William E. Pascoe, and Constance Curry, of whom Renee M. Diss, individually and as personal representative of Craig O. Diss, is, Petitioner,

v.

SOUTH CAROLINA DEPARTMENT OF PARKS, RECREATION AND TOURISM, Respondent.

No. 24546.

Supreme Court of South Carolina.

Heard Nov. 7, 1996.

Decided Jan. 13, 1997.

Russell P. Patterson of Jones, Scheider & Patterson, Hilton Head, for petitioner.

W. Brantley Harvey, Jr., of Harvey & Battey, Beaufort, for respondent.

WALLER, Justice:

We granted certiorari to review the Court of Appeals' opinion in *Dobyns v. South Carolina Department of Parks, Recreation and Tourism,* 317 S.C. 353, 454 S.E.2d 347 (Ct. App.1995). We affirm as modified.

## FACTS

This case involves the construction of a long term lease held by Petitioner, Craig O. Diss (hereinafter Diss or Lessee), on a lot on Hunting Island State Park in Beaufort County.[1] Diss instituted this action when the South Carolina Department of Parks, Recreation and Tourism (PRT or Lessor) refused to consent to the transfer of his lease.[2]

The matter was referred to the Master–In–Equity who held: 1) that PRT could refuse to allow transfer or assignment of the lease without giving any reason, 2) that Diss has the option of renewing his lease for successive ten year periods, **so long as he lives,** and 3) that upon Diss's death, the lease could not be renewed.[3] On appeal, Diss contended the lease did not terminate upon his death, but could be perpetually renewed by his heirs, and that Lessor must have a good reason to deny a request to transfer a lease. The Court of Appeals held, *inter alia,* 1) the lease was not perpetual and was terminable at will by either party upon reasonable notice, and 2) Lessor may deny its consent to transfer a lease for any reason or no reason.

## ISSUES

1. Did the Court of Appeals err in holding the leases terminable at will by either party?

2. Did the Court of Appeals err in failing to address Diss's contention that, upon the death of a Lessee, his heirs may renew the lease?

3. Did the Court of Appeals err in failing to imply a reasonableness requirement into Lessor's refusal to consent to a transfer of a lease?

---

1. This case originally involved two separate actions which were consolidated for appeal. The matter has been settled as to all parties except Diss. Accordingly, all leaseholders other than Diss have been dismissed as parties. Diss recently passed away and his Personal Representative has been substituted as the proper party.

2. The facts are more fully set forth in the Court of Appeals' opinion.

3. The Master noted that the Lessee's heirs could enjoy the balance of any existing ten year renewal period.

## 1. TERMINATION AT WILL

█ The Master ruled existing Lessees have the option of renewing their leases for successive ten year periods, **so long as they live.**[4] The Master essentially found the leases were not perpetual, but were personal to each tenant, such that they could not be renewed upon the death of the tenant. PRT did not appeal this ruling, nor did it file a Rule 59 SCRCP motion to alter or amend.

Citing this Court's opinion in *Carolina Cable Network v. Alert Cable TV, Inc.*, 316 S.C. 98, 447 S.E.2d 199 (1994), the Court of Appeals found no express language in the leases intending to create a perpetual lease.[5] The Court of Appeals went further, however, and cited *Carolina Cable* for the proposition that the leases were **terminable at will** by either party upon reasonable notice. Effectively, this holding reversed the Master's decision that current lessees may renew their leases **so long as they live.** As this ruling was not appealed by PRT, it became the law of the case and should not have been addressed by the Court of Appeals. Accordingly, we vacate so much of the Court of Appeals' opinion as holds the leases were terminable at will by either party. *Burton v. County of Abbeville*, 312 S.C. 359, 440 S.E.2d 396 (Ct.App. 1994) (unchallenged ruling by trial court is the law of the case); *Cash v. Cash*, 320 S.C. 388, 465 S.E.2d 371 (1995) (failure to raise issue at trial or make post trial motion renders issue procedurally barred).[6]

█ Diss also asserts the Court of Appeals missapplied *Carolina Cable* in failing to imply a perpetual lease from the

---

4. The Master's ruling applied to the original 40 plaintiffs, as well as Diss.

5. In *Carolina Cable,* this Court recognized that perpetual contracts are not favored and will be upheld only where the perpetual nature of the contract is an **express** term.

6. Contrary to PRT'S contention, *Carolina Cable* did not change the law in this state but, rather, was premised upon a 1911 case, *Childs v. City of Columbia*, 87 S.C. 566, 70 S.E. 296 (1911). Accordingly, *Carolina Cable* was not a change in the law and PRT could have raised the issue of termination at will prior to the Master's decision, or in a Rule 59 motion. Having failed to do so, it is bound by the Master's ruling. *Cash v. Cash supra.*

circumstances of this case. We disagree. Contrary to Diss's contention, the present circumstances do not warrant an inference that the parties intended to create a perpetual lease.[7] Accordingly, we affirm the Court of Appeals' ruling on this issue.

## 2. DEATH OF LESSEE

■ In light of its holding that the leases were terminable at will, the Court of Appeals did not address Diss's contention that, upon the death of a tenant, the lease may be renewed by the heirs.

■ Diss correctly cites the general rule that the death of a tenant holding a lease for a term of years does not terminate a tenancy.[8] *See Charles v. Byrd,* 29 S.C. 544, 8 S.E. 1 (1888); *Annot: Death of Lessee as Terminating Lease,* 42 A.L.R.4th 963; 51 C.J.S. *Landlord and Tenant* § 92. However, we find that, although the lease does not terminate on a lessee's death, the lease passes to the estate or heirs only until the expiration of the current lease period. *See Joint Properties Owners v. Deri,* 113 A.D.2d 691, 497 N.Y.S.2d 658 (1986) (residential lease is not a property right that devolves upon death to be passed from one generation to another. Landlord has right to choose to whom he wishes to lease property). *See also Sherman v. Carlin,* 46 Ohio App.3d 149, 546 N.E.2d 433 (1988); *Gleason v. Tompkins,* 84 Misc.2d 174, 375 N.Y.S.2d 247 (1975).

---

**7.** The fact the leases allow for "successive" ten year renewals is insufficient to demonstrate an intent of the parties to create a perpetual lease. *See Howard v. Schildberg Constr. Co., Inc.,* 528 N.W.2d 550 (Iowa 1995) (unless lease uses words such as "perpetual," "perpetuity," or "forever," courts will not generally impute a perpetual lease); *Pults v. City of Springdale,* 23 Ark.App. 182, 745 S.W.2d 144 (1988); *Lattimore v. Fisher's Food Shoppe, Inc.,* 313 N.C. 467, 329 S.E.2d 346 (1985); *Burke v. Permian Ford–Lincoln–Mercury,* 95 N.M. 314, 621 P.2d 1119 (1981); *Lonergan v. Connecticut Food Store, Inc.,* 168 Conn. 122, 357 A.2d 910 (1975) (language in leases providing for "successive" renewals does not create a perpetual right of "renewal").

**8.** The Master and Court of Appeals did not hold that the lease terminates upon a lessee's death; they held the heirs could enjoy the balance of an existing lease term.

Lessees cite 51C C.J.S. *Landlord and Tenant* § 58(2) for the proposition that legal successors stand in the same position as the original parties with respect to renewal of the lease. *See also Taylor v. King Cole Theatres*, 183 Va. 117, 31 S.E.2d 260 (1944); *First–Citizens Bank v. Frazelle*, 226 N.C. 724, 40 S.E.2d 367 (1946). However, the benefit of a covenant to renew passes by assignment only in the absence of a contractual restriction. 51C C.J.S. *Landlord and Tenant* § 58(2). Here, the lease by its terms is personal to the Lessee, and may not be assigned without consent of the Lessor. Such restrictions have been found to prohibit renewal by the heirs/assigns. *Edwards v. Tobin*, 132 Or. 38, 284 P. 562 (1930); *Gleason v. Tompkins, supra; Geyer v. Lietzan*, 103 N.E.2d 199, 230 Ind. 404 (1952).

The Court of Appeals correctly held that, upon a tenant's death, the heirs may enjoy the balance of an existing term.

### 3. CONSENT TO TRANSFER

█ Finally, Diss contends the Master and Court of Appeals erred in refusing to impute a "reasonableness requirement" into PRT's refusal to consent to a transfer of the lease. We disagree.

There is a split of authority as to whether or not a landlord may refuse consent to a transfer or assignment arbitrarily, or whether the lessor must have a reasonable basis to deny consent. *Annotation: Withholding Consent–Assignment of Lease*, 21 A.L.R.4th 188 (1983); 2 *Powell on Real Property*, § 17.04[1]: Johnson, *Correctly Interpreting Long Term Leases Pursuant To Modern Contract Law; Toward a Theory of Relational Leases*, 74 Virg.L.Rev. 751 (1988). Courts taking the view that refusal to consent to a transfer must be reasonable tend to adopt the Restatement view which states:

> A restraint on alienation without the consent of the landlord of the tenant's interest in the leased property is valid, but the landlord's consent to an alienation by the tenant cannot be withheld unreasonably, unless a freely negotiated provision in the lease gives the landlord an absolute right to withhold consent.

Restatement (Second) of Property § 15.2(2) (1976). A number of courts, however, adhere to the common law view that consent may be arbitrarily refused. 21 A.L.R.4th at § 3.

■ The Court of Appeals refused to adopt a reasonableness requirement, finding the courts of this state without authority to re-write a contract. We concur with this result. The judicial function of a court of law is to enforce contracts as made by the parties and not to re-write or distort, under the guise of judicial construction, the terms of an unambiguous contract. *Patterson v. Aetna Life Ins. Co.*, 248 S.C. 374, 149 S.E.2d 915 (1966).

Here, the contract clearly provides that the leases may be transferred "upon consent of the lessor." There is no stated reasonableness requirement and this Court declines to read one into the contract. If the parties had chosen to limit Lessor's ability to deny consent, they could have so stated in the contract. Accordingly, we find Lessor acted within its rights in denying consent to transfer the lease.

## CONCLUSION

The Court of Appeals' opinion is vacated to the extent it held the leases were terminable at will by either party. The remainder of the opinion is

**AFFIRMED AS MODIFIED.**

FINNEY, C.J., MOORE, and BURNETT, JJ., and GEORGE T. GREGORY, Jr., Acting Associate Justice, concur.